UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| PAUL EDWARD JOHNSON, MARCIE HENNING, and NADA VAN ASCH, | Case No. 23-CV-2130 (PJS/DTS) |
| Plaintiffs, | |
| v. | ORDER |
| FRANKLIN REED, TODRICK BARNETTE, SCOTT JERRY SEILER, SEILER LAW FIRM, and STATE OF MINNESOTA, | |
| Defendants. | |

---

Paul Edward Johnson, Marcie Henning, and Nada Van Asch, *pro se*.

This matter is before the Court on the complaint filed by plaintiffs Paul Edward Johnson, Marcie Henning, and Nada Van Asch, ECF No. 1, as well as each plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, ECF Nos. 3, 6, 7 (the "IFP applications"). For the following reasons, the Court dismisses this action in its entirety and denies the IFP applications as moot.

I. BACKGROUND

*A.   State-Court Proceedings*

In November 2021, Marilyn Van Asch—represented by Scott Seiler of the Seiler Law Firm—filed an eviction action in Hennepin County District Court. *See* Eviction-Action Compl. 1, *Van Asch v. Johnson*, No. 27-CV-HC-21-1255 (Minn. Dist. Ct. Nov. 8,

2021).[1]  The property at issue was 1907 Willow Avenue North in Minneapolis, Minnesota.  The three named tenant-defendants were the plaintiffs in this action: Johnson, Henning, and Nada Van Asch.  *See id*. at 1, 3.  A hearing took place on November 22, 2021, but the tenant-defendants failed to appear.  *See* Eviction Action—Findings of Fact, Conclusions of Law, Order and J. 1–2, *Van Asch v. Johnson*, No. 27-CV-HC-21-1255 (Minn. Dist. Ct. Nov. 22, 2021).  A housing-court referee recommended eviction, and Hennepin County District Judge Toddrick S. Barnette[2] accepted the recommendation and entered judgment accordingly.  *See id.* at 4.

The tenant-defendants were not actually evicted, however.  Instead, in December 2021, Marilyn Van Asch and the tenant-defendants apparently entered into an agreement that allowed the tenant-defendants to remain in the Willow Avenue property.  *See* Eviction Action—Findings of Fact, Conclusions of Law, Order and J. 1–2, *Van Asch v. Johnson*, No. 27-CV-HC-22-6118 (Minn. Dist. Ct. Feb. 1, 2023), *contained in* Exs., *Van Asch v. Johnson*, No. 27-CV-23-3022 (Minn. Dist. Ct. Mar. 8, 2023) (pages 17–20 of filing).

---

[1] The complaint filed in the eviction action, as well as some of the state-court documents cited in this order, were not included in the documents submitted to this Court.  But because these documents are public records, the Court can take judicial notice of them.  *See, e.g., Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

[2] Plaintiffs' complaint names "Todrick Barnette" as a defendant, but Judge Barnette's first name is spelled "Toddrick."

In October 2022, Marilyn Van Asch, again represented by Seiler, filed a second eviction action in state court. *See id.* at 2. This action culminated in a January 2023 court trial, after which Referee Franklin Reed recommended denying the eviction request and allowing the tenant-defendants to "remain in possession of the [relevant] premises." *Id.* at 3. Referee Reed also recommended expunging the case file in No. 27-CV-HC-22-6118. *See id.* at 3–4. Judge Barnette again accepted the recommendation and entered judgment accordingly. *See id.* at 4.

On February 24, 2023, Seiler sent Johnson, Henning, and Nada Van Asch a letter stating that Marilyn Van Asch was terminating their lease effective March 15, 2023, and that eviction proceedings would begin if they did not leave the property. *See* Ltr. 1 (Feb. 24, 2023), *contained in* ECF No. 1-1 at 60–61.[3] Johnson, Henning, and Nada Van Asch then sued Seiler and Referee Reed in Hennepin County District Court. *See* Civil Compl. 1, *Johnson v. Reed*, No. 27-CV-23-3022 (Minn. Dist. Ct. Mar. 8, 2023). That complaint is difficult to understand, but it seems to allege (among other things) that Referee Reed and Seiler engaged in improper conduct during the second eviction action—that is, the eviction action that Johnson, Henning, and Nada Van Asch *won*. *See id.* at 7–8. About a week later, plaintiffs filed an amended complaint that (again, among other things) added Judge Barnette and the State of Minnesota as defendants. *See, e.g.,*

---

[3] Citations to documents submitted to this Court use the page numbers provided by the District's CM/ECF filing system.

Civil Summons Amendment 1, *Johnson v. Reed*, No. 27-CV-23-3022 (Minn. Dist. Ct. Mar. 15, 2023).

On July 5, 2023, Hennepin County Judge Leonardo Castro issued an order granting defendants' motion to dismiss No. 27-CV-23-3022. *See* Order Granting Mot. to Dismiss 21, *Johnson v. Reed*, No. 27-CV-23-3022 (Minn. Dist. Ct. July 5, 2023). Judge Castro dismissed all of plaintiffs' claims with prejudice, holding that (1) plaintiffs had failed to properly serve Seiler, (2) the complaint failed to state any viable claims (including any viable claims against the State of Minnesota), and (3) judicial immunity barred the claims against Judge Barnette and Referee Reed. *See id.* at 5–21. It does not appear that Johnson, Henning, or Nada Van Asch appealed Judge Castro's ruling. *See, e.g.*, Register of Actions, *Johnson v. Reed*, No. 27-CV-23-3022 (Minn. Dist. Ct.).

B.   *The Complaint*

On July 13, 2013—eight days after Judge Castro dismissed their complaint in No. 27-CV-23-3022—Johnson, Henning, and Nada Van Asch filed this federal action. *See* Docket. Plaintiffs' federal complaint is 48 pages long and largely duplicates the complaint dismissed by Judge Castro. *See* Compl. The complaint names five defendants: Referee Reed, Judge Barnette, Seiler, the Seiler Law Firm, and the State of Minnesota. *See id.* at 1. Plaintiffs also seem to be attempting to sue an unidentified "Attorney for the State of Minnesota," *see id.* at 3, whom the Court will treat as a sixth

defendant. Plaintiffs purport to sue all of the defendants in their "official and private[4] capacities." *Id.* at 1.

The Court will summarize the complaint's allegations defendant-by-defendant, starting with the allegations against Referee Reed and Judge Barnette.

1. Allegations Against Referee Reed and Judge Barnette

The complaint alleges that Referee Reed made various errors in the course of presiding over No. 27-CV-HC-22-6118. For example, plaintiffs claim that Referee Reed (1) incorrectly denied a motion seeking his removal, *see id.* at 5–7; (2) incorrectly rejected plaintiffs' contention that certain documents submitted by Seiler to the Court were forged, *see id.* at 10, 17–18; (3) incorrectly denied (indeed, deemed as frivolous) various requests or demands made by plaintiffs, *see id.* at 15, 47; and (4) incorrectly rejected certain motions because plaintiffs did not pay the associated filing fees, *see id.* at 17, 21.

Two other sets of allegations against Referee Reed relate to plaintiffs' overarching contention that he colluded with Seiler during the eviction proceedings. The first set of claims is hard to follow; the gist appears to be that Referee Reed "maliciously" changed the time of a hearing in No. 27-CV-HC-22-6118 to help Seiler "in gaining a win by default." *See id.* at 4–5. Second, plaintiffs argue that Referee Reed's

---

[4] The Court interprets "private capacities" here to mean "individual capacities" for purposes of 42 U.S.C. § 1983. *See* Section II.B.2 *infra*.

decision to expunge the court record in No. 27-CV-HC-22-6118 was part of a "deliberate attempt to cover the tracks of both himself and [Seiler]." *Id.* at 14.

As for Judge Barnette, the complaint names him as a defendant, but makes no specific allegations concerning him. Presumably plaintiffs seek to hold Judge Barnette liable for accepting Referee Reed's recommendations in No. 27-CV-HC-22-6118—although, as the Court discusses below, it is difficult to know why plaintiffs would seek to hold either Referee Reed or Judge Barnette liable for ruling in their favor.

        2.        Allegations Against Seiler and the Seiler Law Firm

The complaint makes no substantive allegations about the Seiler Law Firm. Instead, all Seiler-related allegations appear to concern only Seiler personally.

With respect to Seiler personally, the complaint essentially alleges that he engaged in improper conduct in litigating (and losing) No. 27-CV-HC-22-6118. Again, the complaint contends that Seiler and Referee Reed colluded to try to help Seiler secure the relief that Seiler's client sought in No. 27-CV-HC-22-6118. The complaint includes allegations that Seiler submitted forged documents (including a forged lease-extension agreement that plaintiffs allegedly entered into after losing the eviction action in No. 27-CV-HC-21-1255). *See, e.g., id.* at 18–20. The complaint also alleges that Seiler had numerous inappropriate *ex parte* communications with Referee Reed throughout No. 27-CV-HC-22-6118. *See, e.g., id.* at 7, 9, 16.

3.      Allegations Against the State of Minnesota and a State Attorney

Plaintiffs' allegations against the State of Minnesota focus on their inability to secure free legal representation in one or both eviction actions. Plaintiffs allege that at some unspecified time, Henning was "offered representation" by the State, but then the "[S]tate offered representation removed themselves from the case," forcing Henning and Nada Van Asch to "represent themselves." *Id.* at 9. (The timing here is not entirely clear, but the allegations appear to relate to the proceedings in No. 27-CV-HC-22-6118.) Plaintiffs also allege that Johnson "was refused representation"; Johnson claims that he spoke to someone who said that a "conflict of interest" prevented the State from providing counsel. *Id.*; *see also, e.g., id.* at 17 (referring to "state[']s Public Defenders Refusing him representation"). Plaintiffs assert that these failures to provide counsel violated their "constitutional right to have [counsel] present" during some or all of the eviction-related proceedings. *Id.* at 9; *see also, e.g. id.* at 47 (stating that "plaintiffs were denied State Appointed Counsel [and] that the ability to be able to file in these proceedings are not just a Civil Right but a necessity to be able to defend one self in these proceedings").

As noted above, the complaint does not identify the party to whom plaintiffs refer as the "Attorney for the State of Minnesota." For present purposes, the Court assumes that plaintiffs mean to sue the individual who "removed" himself or herself

from representing Henning, as well as the individuals who told plaintiffs that the State would not provide free legal representation.

        4.        Causes of Action

Plaintiffs purport to bring claims under several amendments to the U.S. Constitution. The complaint quotes the Fourteenth Amendment, *see id.* at 3, 22, which the Court interprets as an attempt to pursue a procedural-due-process claim. The complaint also invokes the Fourth, Fifth, and Seventh Amendments, *see id.* at 4, 22–23, so the Court assumes that plaintiffs mean to bring claims under those amendments as well.

In addition to these federal constitutional claims, plaintiffs purport to bring claims under "the Minnesota Judicial Codes" as well as "the rules of The Minnesota Board of Legal Practice." *Id.* at 7, 22, 39. They also suggest that defendants have violated the "Minnesota Bar Association" (the Court does not know what this means) and various Minnesota criminal statutes. *Id.* at 22, 39. Plaintiffs also refer to several Minnesota statutes that, they claim, protected their right to remain in the Willow Avenue property. *See, e.g., id.* at 20–21, 40–41.

5.  Relief

For relief, plaintiffs ask this Court (1) to suspend Referee Reed and Seiler; (2) to enjoin Seiler from taking further efforts to evict plaintiffs; and (3) to award compensatory damages, punitive damages, and attorney fees. *See id.* at 38–44.

II. ANALYSIS

*A.  Standard of Review*

Plaintiffs seek IFP status in this action. The IFP applications indicate that plaintiffs are financially qualified for IFP status. But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2).[5]

A case is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). With respect to legal frivolity, a matter "lacks an arguable basis in law if . . . based on an indisputably meritless legal theory." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). With respect to factual frivolity, courts in this District routinely find that a complaint is factually frivolous as to a defendant when the complaint lacks any substantive allegations about that defendant.

---

[5] Although the statute authorizes dismissal of "the case," courts in this District interpret the statute to authorize dismissal of a *portion* of a case as well. *See, e.g., Parson v. Barney*, No. 12-CV-0646 (DWF/DJF), 2023 WL 5447287, at *3 (D. Minn. Aug. 24, 2023).

*See, e.g.*, *Lenear v. Coates*, No. 23-CV-0831 (ECT/JFD), 2023 WL 4901283, at *2 (D. Minn. Aug. 1, 2023).

To determine if a complaint states a claim on which a court may grant relief, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014). A complaint's factual allegations need not be detailed, but they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court's consideration of whether a claim is adequately pleaded is "context-specific"; the court must "draw on its judicial experience and common sense." *Id.* at 679. Courts should construe pro se complaints "liberally," but such pleadings must nevertheless allege sufficient facts to establish the plausibility of the claims asserted. *See, e.g.*, *Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019) (citation omitted).

Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

B.  *Jurisdictional Issues*

1.  Claims Against the State of Minnesota

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI.  Although the Eleventh Amendment explicitly bars only a lawsuit against a state by a citizen of "another State," the Supreme Court has long held that the Eleventh Amendment also bars a lawsuit against a state by one of its own citizens.  *See, e.g.*, *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2258 (2021); *Hans v. Louisiana*, 134 U.S. 1 (1890).

Nothing in the complaint suggests that the State of Minnesota waived its Eleventh Amendment immunity and consented to the claims asserted by plaintiffs in this action.  The Court therefore dismisses the claims against the State of Minnesota without prejudice for lack of jurisdiction.

2.  Official-Capacity Claims

The Eleventh Amendment also deprives this Court of jurisdiction over plaintiffs' official-capacity claims against Referee Reed, Judge Barnette, and the "Attorney for the State of Minnesota."  Plaintiffs purport to bring claims directly under the U.S. Constitution.  It is well established, however, that plaintiffs cannot bring claims directly under the U.S. Constitution; instead, plaintiffs must seek to vindicate their federal

-11-

constitutional rights by suing under 42 U.S.C. § 1983.  *See, e.g., Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

To the extent that a plaintiff sues a state official in his or her official capacity under § 1983, the plaintiff's claims are not "against the official" but "rather . . . against the official's office," and therefore are "no different from [claims] against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Consequently, all of the official-capacity claims that plaintiffs seek to bring against Referee Reed, Judge Barnette, and the unidentified "Attorney for the State of Minnesota" are claims against the State of Minnesota.  For reasons already explained, the Eleventh Amendment deprives the Court of jurisdiction over such claims.  The Court therefore dismisses all official-capacity claims against Referee Reed, Judge Barnette, and the party identified as "Attorney for the State of Minnesota."

    C.    *Merits Issues*

        1.    Individual-Capacity Claims Against Referee Reed and Judge Barnette

Plaintiffs' individual-capacity claims against Referee Reed and Judge Barnette are not barred by the Eleventh Amendment, but they are barred by the doctrine of absolute judicial immunity.[6] As the Eighth Circuit has explained,

> Judicial immunity is immunity from suit. It is grounded in a general principle of the highest importance, that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. The doctrine's broad protection yields in two circumstances: First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Hamilton v. City of Hayti*, 948 F.3d 921, 925 (8th Cir. 2020) (cleaned up). Nothing in the complaint suggests that Referee Reed's or Judge Barnette's conduct was non-judicial or taken without jurisdiction, so judicial immunity clearly applies here. The Court therefore dismisses with prejudice all individual-capacity claims against Referee Reed and Judge Barnette.

---

[6] The law is clear that judicial immunity extends not only to judges, but to judicial referees such as Referee Reed. *See Scheffler v. Trachy*, 821 F. App'x 648, 652 n.8 (8th Cir. 2020).

2.      Federal Claims against Seiler and Seiler Law Firm

On its face, the complaint purports to bring constitutional claims against defendants Seiler and the Seiler Law Firm. The claims against the Seiler Law Firm are factually frivolous. As noted, the complaint makes no substantive allegations about the firm. The Court therefore dismisses all federal claims against the Seiler Law Firm.

That leaves the constitutional claims against Seiler himself. Again, plaintiffs cannot bring their constitutional claims directly under the Constitution, but must do so under 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant's conduct deprived the plaintiff of a constitutionally protected right. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988). To meet the first element, a plaintiff must allege facts showing that the defendant's conduct was "fairly attributable to the State, rather than carried out in a purely private capacity." *Brown v. Linder*, 56 F.4th 1140, 1143 (8th Cir. 2023) (cleaned up). For conduct to be "fairly attributable" to the State:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 422 (8th Cir. 2007) (cleaned up).

Even assuming that plaintiffs have alleged the type of deprivation that satisfies the first element (an assumption that is debatable), plaintiffs have not alleged that Seiler "may fairly be said to be a state actor."  Nothing in the complaint suggests that Seiler is a state official or that his conduct is chargeable to the state.  The complaint does allege that Seiler "has acted together with or has obtained significant aid from state officials"—specifically, that he colluded with Referee Reed to frustrate plaintiffs' rights—but that allegation is implausible.

As a threshold matter, plaintiffs' allegations that Seiler and Reed have been, say, in "collusion throughout" the state-court proceedings are conclusory statements.  *See* Compl. 5; *see also id.* at 7 (referring to "deceit and collusion" by Seiler and Reed); *id.* at 43 (making similar claim).  Such conclusory statements need not be credited by the Court when deciding whether the complaint adequately states a claim against Seiler.  *See, e.g.*, *Iqbal*, 556 U.S. at 678.  Instead, the Court must consider whether the factual allegations in the complaint plausibly suggest that Referee Reed provided "significant aid" to Seiler or that the two "acted together" to evict plaintiffs.

Plaintiffs make three main types of factual claims:

First, plaintiffs complain of multiple *ex parte* communications between Seiler and Referee Reed. *See* Compl. 7–11, 16–17. Specifically, plaintiffs allege that certain communications took place between Seiler and Referee Reed, that those communications took place without plaintiffs' knowledge, and that plaintiffs were therefore deprived of constitutional protections. But plaintiffs provide copies of these challenged communications, *see* Doc. No. 1-1 at 6–7, 14, 25, and it turns out that they are not *ex parte* at all. All three of the letters provided by plaintiffs are written from Seiler to Referee Reed, and all three letters are copied to all three plaintiffs. Plaintiffs nowhere allege that they did not receive the letters. In short, plaintiffs have not identified a single *ex parte* communication between Seiler and Referee Reed.

Second, plaintiffs complain about scheduling-related irregularities that allegedly occurred in No. 27-CV-HC-22-6118. *See* Compl. 4–5. Plaintiffs' discussion is difficult to follow, though, and it is not clear that plaintiffs' allegations have any connection to Seiler or Referee Reed. In any event, any allegation that Referee Reed or anyone else harmed plaintiffs by wrongfully manipulated the scheduling of No. 27-CV-HC-22-6118 is rendered implausible by the fact that Referee Reed *found in plaintiffs' favor* and *denied* Seiler's request that plaintiffs be evicted. The notion that Referee Reed colluded with Seiler to ensure that plaintiffs would be evicted—but then ruled in favor of plaintiffs and against Seiler—makes no sense.

Finally, plaintiffs argue that Referee Reed's decision to expunge court records in No. 27-CV-HC-22-6118 somehow reflects an attempt to cover up evidence that he colluded with Seiler. *See* Compl. 14, 21, 42. But this allegation is also implausible—first, because the allegation that collusion occurred makes no sense, and second, because there is a far more likely explanation for the expungement: Referee Reed, having ruled in plaintiffs' favor, expunged the record of Seiler's unsuccessful attempt to evict them in order to protect their reputation and ability to rent in the future. *See, e.g.*, David A. Dana, *An Invisible Crisis in Plain Sight: The Emergence of the "Eviction Economy," Its Causes, and the Possibilities for Reform in Legal Regulation and Education*, 115 Mich. L. Rev. 935, 946–48 (2017). Referee Reed's decision to expunge the records of No. 27-CV-HC-22-6118 cannot plausibly be viewed as a coverup attempt, especially as there was nothing to cover up.

In sum, the complaint does not plausibly allege that Seiler is a state actor for § 1983 purposes, and therefore all federal individual-capacity claims against Seiler must be dismissed.

        3.     Federal Claims Against State Attorney

As noted, plaintiffs have asserted individual-capacity claims against an unidentified "Attorney for the State of Minnesota." These claims are premised on the proposition that—as a matter of federal constitutional law—tenant-defendants in

Minnesota eviction proceedings have a constitutional right to appointed counsel if they are unable to afford to hire an attorney.  But that is simply not the law.  *See Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 889 (8th Cir. 2020) ("Indigent civil litigants do not have a constitutional or statutory right to appointed counsel." (citations omitted)).  The Court therefore dismisses with prejudice all individual-capacity claims under federal law against the "Attorney for the State of Minnesota."

   D. *Supplemental Jurisdiction Over State-Law Claims*

Plaintiffs also bring a number of claims under state law or state judicial ethics codes.  Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  But § 1367(c) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if," as relevant here, "the district court has dismissed all claims over which it has original jurisdiction." And the Eighth Circuit has directed that, "when a district court has dismissed every federal claim" (as this Court is doing here), "judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over the remaining state-law claims."  *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (cleaned up).  The Court therefore declines to exercise

-18-

supplemental jurisdiction over the state-law claims and dismisses them without prejudice.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiffs' complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE to the extent it seeks to bring (a) claims against the State of Minnesota; (b) official-capacity claims under 42 U.S.C. § 1983 against Referee Franklin Reed, Judge Toddrick Barnett, and "Attorney for the State of Minnesota"; and (3) claims based on state law.

2. Plaintiffs' complaint is DISMISSED WITH PREJUDICE to the extent it seeks to bring individual-capacity claims under federal law against Referee Reed, Judge Barnett, and "Attorney for the State of Minnesota."

3. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE to the extent it seeks to bring claims under federal law against Seiler Law Firm.

4. Plaintiffs' complaint is DISMISSED WITH PREJUDICE to the extent it seeks to bring claims under federal law against Scott Jerry Seiler.

5. Plaintiffs' Applications to Proceed in District Court Without Prepaying Fees or Costs [ECF Nos. 3, 6, 7] are DENIED as moot.

6. Plaintiffs' motion for civil investigative demand freeze [ECF No. 15] is DENIED as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 8, 2023                     s/Patrick J. Schiltz
                                            Patrick J. Schiltz, Chief Judge
                                            United States District Court